## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF WISCONSIN

---

MICROSOFT CORPORATION, a Washington
corporation,

        Plaintiff,

    v.

ANTHONY BOLDIN, an individual, d/b/a
GREENFORESTSOFTWARE.COM, LLC, an
Oregon limited liability company d/b/a
GREENFORESTSOFTWARE.COM;
BARGAIN VALLEY, LLC, a Wyoming
limited liability company, d/b/a
BARGAINVALLEY.COM; and SOFTWARE-
FAST.COM, LLC, a Delaware limited liability
company, d/b/a SOFTWARE FAST, LLC, d/b/a
SOFTWAREFAST.COM, d/b/a SOFTWARE-
FAST.COM,

        Defendants.

Case No. 2:16-cv-1210

---

## COMPLAINT FOR DAMAGES AND EQUITABLE RELIEF

---

Plaintiff MICROSOFT CORPORATION ("Microsoft") files this Complaint against Defendants ANTHONY BOLDIN ("Boldin"), d/b/a GREENFORESTSOFTWARE.COM, LLC d/b/a GREENFORESTSOFTWARE.COM; BARGAIN VALLEY, LLC, d/b/a BARGAINVALLEY.COM; and SOFTWARE-FAST.COM, LLC, d/b/a SOFTWARE FAST, LLC, d/b/a SOFTWAREFAST.COM, d/b/a SOFTWARE-FAST.COM (collectively "Defendants"), alleging as follows:

## I.     INTRODUCTION

1.     This is an action for (1) contributory copyright infringement; (2) trademark infringement; (3) false designation of origin and false or misleading description or representation of fact; (4) unfair competition and false advertising; (5) imposition of a constructive trust; and (6) an accounting of Defendants' profits derived from the alleged activities.

2.     These claims arise from Defendants' unlawful distribution of Microsoft product activation keys that have been decoupled from the software the keys were intended and authorized to activate ("decoupled product activation keys").  On information and belief, the decoupled product activation keys sold by Defendants were stolen or acquired by fraud from Microsoft's supply chain.

3.     Specifically, Defendants unlawfully distributed Microsoft decoupled product activation keys for the following software programs: 1) Microsoft Windows 8.1 Professional; 2) Microsoft Office Professional 2010; 3) Microsoft Office Professional 2013; and, 4) Microsoft Office Professional 2016.

4.     Product activation is a technological tool used by Microsoft to protect its intellectual property from piracy and other forms of abuse.  Product keys are not a software

license, nor do they constitute authorization from Microsoft to access or use software unless the software is legally licensed. Microsoft does not sell product activation keys without the accompanying licensed software and did not authorize Defendants to distribute decoupled product activation keys separately from the software they were originally intended and authorized to activate.

5. On information and belief, Defendants knew, intended, and directed their customers to use the decoupled product activation keys to activate unlicensed copies of Microsoft software.

## II. PARTIES

6. Microsoft is a Washington corporation with its principal place of business in Redmond, Washington. Microsoft develops, markets, distributes, and licenses computer software, among other products and services.

7. On information and belief, defendant Anthony Boldin is a Wisconsin resident and manages, owns, operates, supervises, and controls the conduct and business of the following entities:

     a. GreenForestSoftware.com LLC, a dissolved Oregon Limited Liability Company, d/b/a greenforestsoftware.com (collectively "GFS");

     b. Bargain Valley, LLC, a Wyoming Limited Liability Company; d/b/a bargainvalley.com (collectively "Bargain Valley"); and

     c. Software-Fast.com, LLC, a Delaware Limited Liability Company, d/b/a Software Fast, LLC, d/b/a softwarefast.com, d/b/a software-fast.com (collectively "Software-Fast").

3

8.     On information and belief, Boldin personally participated in and had the right and ability to supervise, direct, and control the wrongful conduct alleged in this Complaint, and derived a direct financial benefit from that wrongful conduct.  Boldin therefore is liable for the wrongful conduct alleged herein directly under principles of secondary liability, including, without limitation, respondeat superior, vicarious liability, and contributory infringement.

9.     Boldin is no stranger to copyright infringement litigation and is currently enjoined by two separate permanent injunction orders entered by the United States District Court for the Eastern District of Wisconsin.  Each of these orders prohibits Boldin from engaging in any infringing use or distribution of Microsoft's copyrighted and trademarked software.  *See Microsoft Corp. v. Small Bus. Alliance*, No. 2:00-cv-00324-LA (E.D. Wis. Sept. 7, 2001) (Dkt. 33) (consent permanent injunction order); *Microsoft Corp. v. Ram Distrib., LLC*, No. 2:06-cv-01247-JPS (E.D. Wis. Apr. 1, 2009) (Dkt. 61-63) (stipulated permanent injunction and judgment), attached hereto as **Exhibits 1-4**.  In the *Ram Distribution* case, Boldin was found to be jointly and severally liable for a $1,170,000 judgment for his infringing activities.  Ex. 4.

10.     In addition, the Court in *Ram Distribution* noted that Microsoft repeatedly warned Boldin about distributing counterfeit Microsoft software obtained from gray market sources, yet Boldin continued to sell and distribute such software anyway.  *See Ram Distrib.*, 625 F. Supp. 2d 674, 683 (E.D. Wis. 2008) (Dkt. 53) (noting Boldin received "multiple warnings that [Defendants'] actions would likely result in infringement, including a letter, email, and a personal visit by a Microsoft investigator," and concluding that Boldin's decision to purchase from unauthorized sources despite these warnings constituted "willful

infringement"). The Court also noted that Boldin's infringing company (Ram Distribution, LLC) recorded $40 million in sales and more than $1 million in profits at its 2005 peak prior to Microsoft's suit. *Id.* at 678.

11.     Boldin also plead guilty in February 2012, in the United States District Court for the Eastern District of Wisconsin, to felony charges of submitting a false statement to the Internal Revenue Service in 2003, and fraudulently charging customers' credit cards in 2007. *See United States v. Boldin*, Case No. 2:12-cr-00042-LA (E.D. Wis. Feb. 15, 2012) (Dkt. 2) (plea agreement). Boldin's false statement to the IRS concerned his monthly income derived from the online sale of software, which Boldin reported was $11,000 when it exceeded $70,000 in actuality. *See id.* at 2, 4-5. Boldin was sentenced in June 2012, to 12 months and one day of imprisonment on the charges, followed by three years of supervised release. *See Boldin*, Case No. 2:12-cr-00042-LA (E.D. Wis. June 8, 2012) (Dkt. 17) (judgment).

12.     On information and belief, GFS was an Oregon Limited Liability Company that was administratively dissolved on November 25, 2015, run solely by Anthony Boldin out of Milwaukee, in the Eastern District of Wisconsin. GFS distributed, and continues to distribute, computer software and components on the internet.

13.     On information and belief, Bargain Valley is a Wyoming Limited Liability Company, run solely by Anthony Boldin out of Milwaukee, in the Eastern District of Wisconsin. Bargain Valley, LLC distributes computer software and components on the internet through Bargainvalley.com.

14.     On information and belief, Software-Fast.com is a Delaware Limited Liability Company, run solely by Anthony Boldin out of Milwaukee, in the Eastern District of

Wisconsin. Software-Fast.com, LLC distributes computer software and components on the internet through software-fast.com and softwarefast.com.

## III. JURISDICTION & VENUE

15. The Court has subject matter jurisdiction over Microsoft's Lanham Act claims, contributory copyright infringement claim, and related claims pursuant to 15 U.S.C. § 1121, 17 U.S.C. § 501, and 28 U.S.C. §§ 1331 and 1338(a). The Court also has subject matter jurisdiction under 28 U.S.C. § 1332 because this action is between citizens of different states and the matter in controversy exceeds $75,000, exclusive of interest and costs.

16. The Court has personal jurisdiction over Defendants because they are residents of the Eastern District of Wisconsin, agents and/or alter-egos of a resident of this District, or otherwise do business in this District. Anthony Boldin is the owner of real property at 370 Manor Court, Brookfield, Wisconsin, and on information and belief, resides at that address.

17. Venue is proper in this Court pursuant to 28 U.S.C. § 1400(a) because Defendants are residents of, or otherwise may be found in, the Eastern District of Wisconsin.

## IV. FACTS COMMON TO ALL CLAIMS

### A. The Global Problem of Software Piracy

18. Software developers lose billions of dollars in annual revenue from software piracy, namely, the unauthorized and unlawful copying, downloading, and distributing of copyrighted and trademarked software and related components. In 2013, the commercial value of pirated software in the United States was in excess of $9.7 billion.

19. Software developers, like Microsoft, are not the only victims of software piracy. Consumers are also victims, as they are often deceived by distributors of pirated

6

software who go to great lengths to make the software appear to be licensed and authorized by Microsoft.

**B.    Microsoft's Intellectual Property**

20.    Microsoft develops, advertises, markets, distributes, and licenses a number of computer software programs.  One of the methods Microsoft uses to distribute software is through digital downloads on Microsoft.com and through websites of authorized electronic distribution vendors.

21.    Microsoft sells licenses to use its software, not the software itself.  In other words, no title to Microsoft software passes to a user when they purchase a license and the accompanying software program.

22.    Microsoft's software licensing agreements make clear to end users that they are acquiring a license to use the software and not title to the software.  The licensing agreements contain various limitations around the use of the software and place certain restrictions on any transfer of the license and accompanying materials such as backup discs, proof of license materials, and product activation keys.  *See* Microsoft License Terms, https://www.microsoft.com/en-us/useterms (last visited Sept. 2, 2016).

23.    **Microsoft Windows 8.1:**  Microsoft has developed, advertises, markets, distributes, and licenses a computer operating system called Microsoft Windows 8.1 ("Windows 8.1").  Windows 8.1 is available in a number of different versions included, but not limited to, Windows 8.1 Ultimate, Windows 8.1 Professional, Windows 8.1 Home Premium, and Windows 8.1 Enterprise.  Microsoft holds a valid copyright in Windows 8.1 Pro, the most expansive version of Windows 8.1, and this copyright encompasses all versions of Windows 8.1.  Microsoft's copyright in Windows 8.1 Pro was duly and properly registered

with the United States Copyright Office, bearing the number TX 7-740-672, and is attached hereto as **Exhibit 5**.

24. **Microsoft Office 2010:** Microsoft has developed, advertises, markets, distributes, and licenses a suite of productivity software for business, home, and educational use called Microsoft Office 2010 ("Office 2010"). Office 2010 is available in a number of different versions, each of which includes certain combinations of products, programs, and features. Versions of Office 2010 include, but are not limited to, Office Professional 2010, Office Professional Home and Business 2010, Office Home and Business 2010, Office Home and Student 2010, Office Professional Academic 2010, and Office Professional Plus 2010. Microsoft holds a valid copyright in Office Professional Plus 2010, the most expansive version of Office 2010, and this copyright encompasses all versions of Office 2010. Microsoft's copyright in Office Professional Plus 2010 was duly and properly registered with the United States Copyright Office, bearing the number TX 7-151-840, and is attached hereto as **Exhibit 6**.

25. **Microsoft Office 2013:** Microsoft has developed, advertises, markets, distributes, and licenses a suite of productivity software for business, home, and educational use called Microsoft Office 2013 ("Office 2013"). Office 2013 is available in a number of different versions, each of which includes certain combinations of products, programs, and features. Versions of Office 2013 include, but are not limited to, Office Professional 2013, Office Professional Home and Business 2013, Office Home and Business 2013, Office Home and Business 2013, and Office Professional Plus 2013. Microsoft holds a valid copyright in Office Professional 2013, the most expansive version of Office 2013, and this copyright encompasses all versions of Office 2013. Microsoft's copyright in Office Professional 2013

8

was duly and properly registered with the United States Copyright Office, bearing the number TX 7-649-882, and is attached hereto as **Exhibit 7**.

26.    **Microsoft Office 365:**  Microsoft has developed, advertises, markets, distributes, and licenses a suite of productivity software for business, home, and educational use called Microsoft Office 365 ("Office 365").  Office 365 is available in a number of different versions, each of which includes certain combinations of products, programs, and features.  Versions of Office 365 include, but are not limited to, Office 365 Business, Office 365 Business Essentials, Office 365 Business Premium, Office 365 ProPlus, Office 365 Enterprise E1, Office 365 Enterprise E3, Office 365 Enterprise E5, Office Professional 2016, Office Professional Home and Business 2016, Office Home and Business 2016, Office Home and Student 2016, and Office Professional Plus 2016.  Microsoft holds a valid copyright in Office 365 ProPlus 2016, the most expansive version of Office 365, and this copyright encompasses all versions of Office 365, including Office Professional 2016.  Microsoft's copyright in Office 365 ProPlus 2016 was duly and properly registered with the United States Copyright Office, bearing the number TX 8-097-602, and is attached hereto as **Exhibit 8**.

27.    Microsoft has also duly and properly registered a number of trademarks and service marks in the United States Patent and Trademark Office on the Principal Register, including without limitation:

a.    "MICROSOFT," Trademark and Service Mark Registration No. 1,200,236, for computer programs and computer programming services;

9

b.  "MICROSOFT (STYLIZED) AND DESIGN," Trademark and Service

Mark Registration No. 4,552,363, for computer programs and computer

programming services;

c.  "MICROSOFT DESIGN (Color)," Trademark and Service Mark

Registration No. 4,560,827, for computer operating system programs

and utilities, etc.;

d.  "OFFICE 2010 DESIGN," Trademark Registration No. 4,029,299, for

computer productivity software;

e.  "OFFICE 2012 DESIGN," Trademark Registration No. 4,459,826, for

computer productivity software; and

f.  "OFFICE (W/OFFICE 2012 DESIGN)," Trademark Registration No.

4,456,462, for computer productivity software.

True and correct copies of the Trademark Registrations for (a) through (f) above are attached

as **Exhibits 9 through 14**, respectively (the "Microsoft Marks").

C.  **Product Activation**

28.  Like many other software developers, Microsoft has implemented a wide range

of initiatives to protect its customers and combat theft of its intellectual property.  One such

initiative is Microsoft's product activation system which enables activation of software

through genuine product activation keys.  Because Microsoft's copyrighted software is

capable of being installed on multiple computers, Microsoft relies on the product activation

process to detect piracy and protect consumers from the risks of non-genuine software.

29.  A Microsoft product activation key is a 25-character alphanumeric string

generated by Microsoft and provided to customers.  Generally speaking, in order to install

Microsoft software on a device, customers must enter a genuine product activation key to activate and use their software. Accordingly, product activation keys are a necessary component of the software as, without them, the software either cannot be installed or remains in an inactivated "trial" state.

30. One prevalent form of software piracy is the unauthorized and unlawful distribution of decoupled Microsoft product activation keys stolen from Microsoft's supply chain. The global black market for these stolen decoupled product activation keys generates millions of dollars of illicit revenues for distributors. The unlawful sellers of decoupled product activation keys frequently distribute the keys to their customers via email and provide a download link for them to obtain the software digitally. Many times, as is the case here, the download link is one of Microsoft's own software download sites. Distributors of decoupled product activation keys frequently use advertising designed to deceive customers into believing they are acquiring genuine, licensed software when, in fact, they are not. ***Defendants' activities fit squarely within this pattern.***

**D. Defendants' False and Misleading Advertising and Infringing Use of Microsoft Trademarks**

31. Defendants' websites are replete with representations designed to convince customers that they are a legitimate supplier of software. The front page of the greenforestsoftware.com website states: "Plus, since we only sell software licensing directly with the manufacturers, you can be ***absolutely certain that the product is genuine***. There isn't anything more genuine that [sic] getting your software and keys ***directly from Microsoft!*** Save the planet. Save some cash. ***All with the confidence that your software and keys are authentic***." GreenForest Software, http://www.greenforestsoftware.com (last visited Sept. 2,

11

2016) (emphasis added). Additional representations on Defendants' websites include the following:

      a.      Softwarefast.com: "SoftwareFast.com is here for one reason . . . to partner with IT professionals and provide them with ***amazing software and licensing*** and at ridiculously low prices!" SoftwareFast, http://www.softwarefast.com/store/pg/12-SoftwareFast-About-Us.aspx (last visited Sept. 2, 2016) (alteration in original) (emphasis added).

      b.      Software-fast.com: "Your ***trusted*** partner[.] We are a lot more than software. Every product we sell is ***backed by a professional team*** of customer support and product specialists." SoftwareFast, http://www.software-fast.com (last visited Sept. 2, 2016) (emphasis added).

      c.      Bargainvalley.com: "Our mission and vision is to provide you with great bargain prices on all of your technology product needs with the care and friendly service that you won't find at mega corporations. ***We treat you like we treat our own neighbor, and with that guiding principle, everything works out.***" Bargain Valley, http://bargainvalley.com (last visited Sept. 2, 2016) (emphasis added).

32.     Defendants' website and sales material also display the above-listed Microsoft Marks without a license or other authorization from Microsoft. This unauthorized use of the world-famous Microsoft Marks is designed to add credibility to Defendants' representations and convince the public that they are a genuine supplier of Microsoft software and to confuse

consumers about the source, sponsorship, affiliation and approval of the software and/or related components by Microsoft.

**E.    Microsoft's Test Purchases from Defendants**

33.    Microsoft has conducted seven separate test purchases from Defendants and, on each occasion, Defendants sold decoupled product activation keys.  The seven product activation keys originate from three different sources or programs:  1) two were issued solely for use in academic programs in China; 2) one was issued for Microsoft internal use only; and 3) four were acquired with tokens believed to be stolen from Microsoft's supply chain.

**Test Purchase 1 (greenforestsoftware.com)**
**(Microsoft Exhibit Management # 78210)**

34.    On August 26, 2014, GFS, through its website greenforestsoftware.com, sold a Microsoft investigator a Microsoft Windows 8.1 Professional decoupled product activation key for $92.79.  GFS provided the investigator with instructions to download the software directly from a Microsoft software download site.  The Windows Professional 8.1 product activation key was issued by Microsoft on or about August 1, 2014, for use by a subscriber in the DreamSpark program.  DreamSpark is a program supporting technical education by providing access to Microsoft software to students and educational institutions for learning, teaching and research purposes.  DreamSpark software licenses are not transferable, nor are the associated product activation keys.  Indeed, **no** Microsoft software licensee is ever authorized to transfer their product activation key separate from the licensed software it was intended to activate.

35.    Microsoft did not authorize Defendants to distribute the Windows Professional 8.1 decoupled product activation key or to direct their customer to Microsoft's software

download site to obtain software and Defendants' distribution contributed to and induced the direct infringement of Microsoft's copyright in that software.

**Test Purchase 2 (greenforestsoftware.com)**
**(Microsoft Exhibit Management # 79279)**

36.     On or about January 30, 2015, GFS, through its website greenforestsoftware.com, sold a Microsoft investigator a decoupled product activation key for Office Professional 2013 for $198.97.  GFS provided the investigator with instructions to download the software directly from a Microsoft software download site.  The Office Professional 2013 key was issued by Microsoft for use by a subscriber in the Student Hero Program, a program for students and academic institutions in China.  Student Hero software is not transferrable, nor are the associated product activation keys.  Indeed, ***no*** Microsoft software licensee is ever authorized to transfer their product activation key separated from the licensed software it was intended to activate.

37.     Microsoft did not authorize Defendants to distribute the Office Professional 2013 decoupled product activation key or to direct their customer to Microsoft's software download site to obtain software and Defendants' distribution contributed to and induced the direct infringement of Microsoft's copyright in that software.

**Test Purchase 3 (barginvalley.com)**
**(Microsoft Exhibit Management # 80410)**

38.     On or about October 12, 2015, Bargain Valley, through its website bargainvalley.com, sold an investigator an Office Professional 2010 decoupled product activation key for $198.97.  Bargain Valley provided the investigator with instructions to download the software from an unauthorized download site or alternatively, directly from a Microsoft software download site.  The Office Professional 2010 key was issued by Microsoft

for internal use purposes only. Software intended for internal Microsoft use is not transferrable, nor are the associated product activation keys. Indeed, **no** Microsoft software licensee is ever authorized to transfer their product activation key separate from the licensed software it was intended to activate. The investigator additionally purchased a cable modem as part of this test purchase from bargainvalley.com that was delivered with a shipping address associated with Software-Fast.

39.     Microsoft did not authorize Defendants to distribute the Office Professional 2010 decoupled product activation key or to direct their customer to Microsoft's software download site to obtain software and Defendants' distribution contributed to and induced the direct infringement of Microsoft's copyright in that software.

### Test Purchase 4 (softwarefast.com)
### (Microsoft Exhibit Management # 82486)

40.     On or about April 18, 2016, Software-Fast, through its website softwarefast.com, sold an investigator an Office Professional 2016 decoupled product activation key for $329.99. Software-Fast provided the investigator with instructions to download the software directly from a Microsoft software download site. A presently unknown person or entity acquired the Office Professional 2016 key from Microsoft's office.com website on December 3, 2015, with an OEM token that Microsoft believes was stolen from its supply chain.

41.     OEM tokens are codes Microsoft supplies with the purchase of a license for Microsoft Office software to acquire product activation keys for the software from Microsoft.com.

42.     Microsoft did not authorize Defendants to distribute the Office Professional 2016 decoupled product activation key or to direct their customer to Microsoft's software

15

download site to obtain software and Defendants' distribution contributed to and induced the direct infringement of Microsoft's copyright in that software.

**Test Purchase 5 (software-fast.com)**
**(Microsoft Exhibit Management # 82487)**

43. On or about April 29, 2016, Software-Fast, through software-fast.com, sold a Microsoft investigator an Office Professional 2013 decoupled product activation key for $279.99. Software-Fast provided the investigator with instructions to download the software directly from a Microsoft software download site. A presently unknown person or entity acquired the Office Professional 2013 key from Microsoft's office.com website on March 4, 2015, with an OEM token that Microsoft believes was stolen from its supply chain.

44. Microsoft did not authorize Defendants to distribute the Office Professional 2013 decoupled product activation key or to direct their customer to Microsoft's software download site to obtain software and Defendants' distribution contributed to and induced the direct infringement of Microsoft's copyright in that software.

**Test Purchase 6 (barginvalley.com)**
**(Microsoft Exhibit Management # 82988)**

45. On or about June 16, 2016, Bargain Valley, through its website bargainvalley.com, sold an investigator an Office Professional 2016 decoupled product activation key for $278.95. Bargain Valley provided the investigator with instructions to download the software from a Microsoft software download site. A presently unknown person or entity acquired the Office Professional 2016 key from Microsoft's office.com website on February 20, 2016, with an OEM token that Microsoft believes was stolen from its supply chain.

46.     Microsoft did not authorize Defendants to distribute the Office Professional 2016 decoupled product activation key or direct their customer to Microsoft's software download site to obtain software and Defendants' distribution contributed to and induced the direct infringement of Microsoft's copyright in that software.

**Test Purchase 7 (software-fast.com)**
**(Microsoft Exhibit Management # 82690)**

47.     On or about June 16, 2016, Software-Fast, through its website software-fast.com, sold an investigator an Office Professional 2016 decoupled product activation key for $329.99.  Software-Fast provided the key with instructions to download the Office Professional 2016 software directly from a Microsoft software download site.  A presently unknown person or entity acquired the Office Professional 2016 key from Microsoft's office.com website on November 11, 2015, with an OEM token that Microsoft believes was stolen from its supply chain.

48.     Microsoft did not authorize Defendants to distribute the Office Professional 2016 decoupled product activation key or direct their customer to Microsoft's download site to obtain software and Defendants' distribution contributed to and induced the direct infringement of Microsoft's copyright in that software.

**V.     CAUSES OF ACTION**

**First Claim**

**Contributory Copyright Infringement – 17 U.S.C. §§ 501, _et seq._**

49.     Microsoft is the sole owner of Microsoft Office 8.1, Microsoft Office 2010, Microsoft Office 2013, Microsoft Office 2016, and of the corresponding copyrights and Certificates of Registration with the registration numbers listed above.

17

50.     Defendants have contributed to the infringement of Microsoft's copyrights by distributing decoupled product activation keys in the United States of America without approval or authorization from Microsoft to end users and directing those end users to download and activate software that they were not licensed to use with the decoupled product activation keys.

51.     At a minimum, Defendants acted with willful blindness to, or in reckless disregard of, Microsoft's registered copyrights.

52.     On information and belief, Defendants have committed, and continue to commit, acts contributing to the copyright infringement of Microsoft's intellectual property.

53.     As a result of Defendants' wrongful conduct, Microsoft is entitled to recover its actual damages and Defendants' profits attributable to the infringement.  Alternatively, Microsoft is entitled to statutory damages under 17 U.S.C. § 504(c).

54.     The award of statutory damages should be enhanced in accordance with 17 U.S.C. § 504(c)(2).

55.     Microsoft is further entitled to injunctive relief and an order impounding all infringing materials.  Microsoft has no adequate remedy at law for Defendants' wrongful conduct because, among other things: (a) Microsoft's copyright is unique and valuable property which has no readily determinable market value; (b) Defendants' infringement harms Microsoft such that Microsoft could not be made whole by any monetary award; and (c) Defendants' wrongful conduct, and the resulting damage to Microsoft, is continuing.

## Second Claim

## Trademark Infringement – 15 U.S.C. § 1114

56.     Defendants' activities constitute infringement of Microsoft's federally registered trademarks with the registration numbers listed above.

57.     Microsoft advertises, markets, distributes, and licenses its software and related components under the trademarks described above, and uses these trademarks to distinguish Microsoft's software and related components from the software or products of others in the same field or related fields.

58.     Because of Microsoft's long, continuous, and exclusive use of these trademarks, they have come to mean, and are understood by customers, end users, and the public to signify, software programs and related components or services of Microsoft.

59.     Defendants have been, and continue to be, involved in using Microsoft's registered trademarks in advertising, marketing, and/or offering Microsoft software and product activation keys to be used by customers, without Microsoft's authority, to activate unlicensed and pirated software.

60.     Defendants are not licensed to use these registered trademarks.

61.     Defendants' use of the trademarks in advertising, marketing and offering software and product activation keys is likely to cause confusion, mistake, or deception as to their source, origin, or authenticity and the source, origin or authenticity of the unlicensed and pirated software that Defendants contribute to and induce their customers to download and activate.

62.     Further, Defendants' activities are likely to lead the public to conclude, incorrectly, that the infringing materials that Defendants are advertising, marketing, installing,

offering, and/or distributing originate with or are authorized by Microsoft, thereby harming Microsoft, its licensees, and the public.

63.     At a minimum, Defendants acted with willful blindness to, or in reckless disregard of, Microsoft's registered marks.

64.     As a result of Defendants' wrongful conduct, Microsoft is entitled to recover its actual damages, Defendants' profits attributable to the infringement, and treble damages and attorney fees pursuant to 15 U.S.C. § 1117(a) and (b).  Alternatively, Microsoft is entitled to statutory damages under 15 U.S.C. § 1117(c).

65.     Microsoft is further entitled to injunctive relief and an order compelling the impounding of all infringing and unauthorized materials.  Microsoft has no adequate remedy at law for Defendants' wrongful conduct because, among other things:  (a) Microsoft's trademarks and service mark are unique and valuable property that have no readily determinable market value; (b) Defendants' infringement constitutes harm to Microsoft's reputation and goodwill such that Microsoft could not be made whole by any monetary award; (c) if Defendants' wrongful conduct is allowed to continue, the public is likely to become further confused, mistaken, or deceived as to the source, origin or authenticity of the infringing materials; and (d) Defendants' wrongful conduct, and the resulting harm to Microsoft, is continuing.

### Third Claim

**False Designation of Origin, False and Misleading Description or Representation of Fact – 15 U.S.C. §§ 1125, *et seq.***

66.     Microsoft advertises, markets, distributes, and licenses its software and related components under the trademarks described above, and uses these trademarks to distinguish

20

Microsoft's software and related components from the software or products of others in the same field or related fields.

67.     Because of Microsoft's long, continuous, and exclusive use of these trademarks and service marks, they have come to mean, and are understood by customers, end users, and the public to signify software or services of Microsoft.

68.     Microsoft has also designed distinctive and aesthetically pleasing displays, logos, icons, graphic images, and packaging (collectively, "Microsoft visual designs") for its software programs and related components.

69.     On information and belief, Defendants' wrongful conduct includes the use of Microsoft's marks, name, and/or imitation visual designs (specifically displays, logos, icons, graphic designs, and/or packaging virtually indistinguishable from Microsoft visual designs) in connection with their goods and services.

70.     On information and belief, Defendants engaged in such wrongful conduct with the purpose of misleading or confusing customers and the public as to the origin and authenticity of the goods and services advertised, marketed, installed, offered or distributed in connection with Microsoft's marks, name, and imitation visual designs, and of trading upon Microsoft's goodwill and business reputation.  Defendants' conduct constitutes (a) false designation of origin, (b) false or misleading representation or description, and (c) false or misleading representation that the imitation visual images originate from or are authorized by Microsoft, all in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

71.     Defendants' wrongful conduct is likely to continue unless restrained and enjoined.

72.     As a result of Defendants' wrongful conduct, Microsoft is entitled to recover its actual damages, Defendants' profits, and treble damages and attorney fees pursuant to 15 U.S.C. § 1117.

73.     Further, Microsoft is entitled to injunctive relief and to an order compelling the impounding of all imitation marks and visual designs being used, advertised, marketed, installed, offered or distributed by Defendants.  Microsoft has no adequate remedy at law for Defendants' wrongful conduct because, among other things:  (a) Microsoft's marks, name and visual designs are unique and valuable property which have no readily determinable market value; (b) Defendants' advertising, marketing, installation, or distribution of imitation visual designs constitutes harm to Microsoft such that Microsoft could not be made whole by any monetary award; and (c) Defendants' wrongful conduct, and the resulting damage to Microsoft, is continuing.

## Fourth Claim
### Unfair Competition & False Advertising – 15 U.S.C. § 1125(a)

74.     Defendants have made false and misleading representations and descriptions of fact in connection with the offering for sale and sale of unlicensed Microsoft software through their websites, including without limitation, that Defendants are offering licensed Microsoft software.

75.     Defendants' false and misleading representations and descriptions of fact were made in commercial advertising or promotion, including without limitation, in connection with the offering for sale and sale of unlicensed Microsoft software through their websites.

76. Defendants' false and misleading representations and descriptions of fact misrepresent the nature, characteristics, qualities, or origin of their goods, services, and commercial activities.

77. Defendants' use of Microsoft's copyrights and trademarks referenced above and its false and misleading representations and descriptions of fact in interstate commerce in connection with its offering for sale of unlicensed Microsoft software has either deceived or has the capacity to deceive a substantial segment of potential consumers, and such deception is material, in that it is likely to influence the consumers' purchasing decisions.

78. Defendants have used, and continue to use, Microsoft's copyrights and trademarks referenced above to compete unfairly with Microsoft and to deceive customers.

79. Defendants' conduct constitutes false advertising and federal unfair competition, in violation of 15 U.S.C. § 1125(a).

80. Defendants' wrongful conduct is likely to continue unless restrained and enjoined.

81. As a result of Defendants' wrongful conduct, Microsoft is entitled to recover its actual damages, Defendants' profits, and treble damages and attorney fees pursuant to 15 U.S.C. § 1117.

82. Further, Microsoft is entitled to injunctive relief and to an order directing Defendants to stop representing or implying that they are offering licensed Microsoft software. Microsoft has no adequate remedy at law for Defendants' wrongful conduct because, among other things: (a) Defendants' advertising, marketing, installation, or distribution of unlicensed Microsoft software constitutes harm to Microsoft such that

Case 2:16-cv-01210-PP   Filed 09/08/16   Page 23 of 27   Document 1

Microsoft could not be made whole by any monetary award; and (b) Defendants' wrongful conduct, and the resulting damage to Microsoft, is continuing.

## Fifth Claim
### Imposition of a Constructive Trust

83.     Defendants' conduct constitutes deceptive and wrongful conduct in the nature of passing off the infringing materials as genuine Microsoft software or related components approved or authorized by Microsoft.

84.     By virtue of Defendants' wrongful conduct, Defendants have illegally received money and profits that rightfully belong to Microsoft.

85.     On information and belief, Defendants hold the illegally received money and profits in the form of bank accounts, real property, or personal property that can be located and traced.  All such money and profits, in whatever form, are held by Defendants as a constructive trustee for Microsoft.

## Sixth Claim
### Accounting

86.     Microsoft is entitled, pursuant to 17 U.S.C. § 504 and 15 U.S.C. § 1117, to recover any and all profits of Defendants that are attributable to the acts of infringement.

87.     Microsoft is entitled, pursuant to 17 U.S.C. § 504 and 15 U.S.C. § 1117, to actual damages or statutory damages sustained by virtue of Defendants' acts of infringement.

88.     The amount of money due from Defendants to Microsoft is unknown to Microsoft and cannot be ascertained without a detailed accounting by Defendants of the precise number of units of infringing material advertised, marketed, installed, offered or distributed by Defendants.

## IV. PRAYER FOR RELIEF

89. WHEREFORE, Microsoft respectfully prays for the following relief:

90. That the Court enter judgment in Microsoft's favor on all claims;

91. That the Court restrain and enjoin Defendants, their directors, principals, officers, agents, representatives, employees, attorneys, successors and assigns, and all others in active concert or participation with it, from:

      a. copying or making any other infringing use or infringing distribution of Microsoft's software, decoupled product activation keys, and other intellectual property including but not limited to the software identified by the Trademark, Service Mark, and Copyright Registration Numbers listed above;

      b. manufacturing, assembling, producing, distributing, offering for distribution, circulating, selling, offering for sale, advertising, importing, promoting, or displaying any Microsoft software or other intellectual property bearing any simulation, reproduction, counterfeit, copy, or colorable imitation of any of Microsoft's registered trademarks, service mark, or copyrights, including, but not limited to, the Trademark, Service Mark, and Copyright Registration Numbers listed above;

      c. using any simulation, reproduction, counterfeit, copy, or colorable imitation of Microsoft's registered trademarks, service mark, or copyrights including, but not limited to the Trademark, Service Mark, and Copyright Registration Numbers listed above, in connection with the manufacture, assembly, production, distribution, offering for distribution, circulation, sale, offering for sale, import, advertisement, promotion, or display of any software, component, and/or other item not authorized or licensed by Microsoft;

d.      using any false designation of origin or false or misleading description or false or misleading representation that can or is likely to lead the trade or public or individuals erroneously to believe that any software, component, and/or other item has been manufactured, assembled, produced, distributed, offered for distribution, circulation, sold, offered for sale, imported, advertised, promoted, displayed, licensed, sponsored, approved, or authorized by or for Microsoft, when such is not true in fact;

e.      engaging in any other activity constituting an infringement of any of Microsoft's trademarks, service mark and/or copyrights, or of Microsoft's rights in, or right to use or to exploit, these trademarks, service mark, and/or copyrights; and

f.      assisting, aiding, or abetting any other person or business entity in engaging in or performing any of the activities listed above;

92.     That the Court enter an order pursuant to 15 U.S.C. § 1116 and 17 U.S.C. § 503 impounding all counterfeit and/or infringing copies of purported Microsoft software and/or materials bearing any of Microsoft's trademarks or service marks, and any related item, including business records, that are in Defendants' possession or under their control;

93.     That the Court enter an order declaring that Defendants hold in trust, as constructive trustees for the benefit of Microsoft, the illegal profits obtained from their distribution of counterfeit and infringing copies of Microsoft's software, and requiring Defendants to provide Microsoft a full and complete accounting of all amounts due and owing to Microsoft as a result of Defendants' unlawful activities;

94.     That Defendants be required to pay all general, special, actual, and statutory damages which Microsoft has sustained, or will sustain, as a consequence of Defendants'

unlawful acts, and that such damages be enhanced, doubled, or trebled as provided for by 17 U.S.C. § 504(c) and 15 U.S.C. § 1117(b);

95.     That Defendants be required to pay to Microsoft both the costs of this action and the reasonable attorneys' fees incurred by Microsoft in prosecuting this action, as provided for by 15 U.S.C. § 1117 and 17 U.S.C. § 505; and

96.     That the Court grant Microsoft such other, further, and additional relief as the Court deems just and equitable.


DATED: September 8, 2016                    Respectfully submitted,

                                            Quarles & Brady LLP
                                            *Attorneys for Plaintiff Microsoft Corporation*

                                            By:  *s/Daniel E. Conley*
                                            Daniel E. Conley, WI Bar No. 1009443
                                            Patrick W. Schmidt, WI Bar No. 1016367
                                            Jonathan W. Hackbarth, WI Bar No. 1056411
                                            QUARLES & BRADY LLP
                                            411 East Wisconsin Avenue, Suite 2400
                                            Milwaukee, Wisconsin 53202-4426
                                            Telephone:    (414) 277-5375
                                            Facsimile:     (414) 978-8982
                                            Daniel.Conley@quarles.com
                                            Patrick.Schmidt@quarles.com
                                            Jon.Hackbarth@quarles.com

                                            Davis Wright Tremaine LLP
                                            *Attorneys for Plaintiff Microsoft Corporation*

                                            Bonnie E. MacNaughton, admission pending
                                            Ross Siler, admission pending
                                            DAVIS WRIGHT TREMAINE LLP
                                            1201 Third Avenue, Suite 2200
                                            Seattle, Washington 98101-3045
                                            Telephone:    (206) 622-3150
                                            Facsimile:     (206) 757-7700
                                            BonnieMacNaughton@dwt.com
                                            Ross.Siler@dwt.com